UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CONNIE SCHWENDEMAN,<br><br>    Plaintiff,<br><br>v.<br><br>HEALTH CAROUSEL, LLC and HEALTH CAROUSEL TRAVEL NETWORK, LLC,<br><br>    Defendants. | Case No. 18-cv-07641-BLF<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION; AND STAYING ACTION**<br><br>[Re: ECF 19] |

Plaintiff Connie Schwendeman asserts a single claim under California's Private Attorneys General Act ("PAGA") against her former employers, Defendants Health Carousel, LLC and Health Carousel Travel Network, LLC (collectively, "Health Carousel"). Health Carousel has filed a motion to compel arbitration and dismiss the action.

Having considered the parties' briefs and supplemental briefs, the relevant legal authorities, and the oral argument of counsel, the Court GRANTS the motion to compel arbitration. However, the Court STAYS the action pending completion of arbitration rather than dismissing it as requested by Health Carousel.

**I.    INTRODUCTION**

Health Carousel provides healthcare staffing for temporary assignments at medical facilities across the United States. Dalton Decl. ¶ 1-2, ECF 19-1. Schwendeman, a registered nurse, began working for Health Carousel in 2017, when she was placed at Lucile Packard Children's Hospital Stanford in Palo Alto, California. *Id*. ¶ 3. Schwendeman was employed by Health Carousel "in Palo Alto, California from August 2017 to February 2018." FAC ¶ 4, ECF

17. Prior to starting employment, Schwendeman was provided with Health Carousel's standard new-hire paperwork via an online portal. *Id*. ¶ 4. The new-hire paperwork included a "Mutual Agreement to Arbitrate Claims" ("Agreement"), a five-page stand-alone document that requires binding arbitration of certain disputes and waives the right to bring class or collective claims. *Id*. ¶ 4 & Exh. 1 (Agreement). Execution of the Agreement is optional for Health Carousel employees pursuant to a section titled "An Employee's Right to Opt Out Of Arbitration," which states "Arbitration is not a mandatory condition of employment at the Company, and therefore you may submit a statement notifying the Company that you wish to opt out and not be subject to this Agreement." Agreement at 4. The same section of the Agreement states that "[a]n employee's decision to be bound or not bound by this Agreement is completely voluntary." *Id*. Schwendeman electronically signed the Agreement on July 6, 2017 and she never opted out of the Agreement. *Id*. ¶ 4 & Exh 1 (Agreement).

Schwendeman filed the complaint in this action on December 19, 2018, asserting putative class and collective claims under California law and the Fair Labor Standards Act. *See* Compl., ECF 1. On January 8, 2019, Health Carousel's counsel advised Schwendeman's counsel that the parties had signed the Agreement. *See* Joint Stipulation at 2, ECF 15. The parties thereafter stipulated to dismissal of all class and collective claims without prejudice, and to amendment of the complaint to add a PAGA claim. *See id.* Schwendeman filed the operative first amended complaint ("FAC") on March 11, 2019, asserting a single claim under PAGA. *See* FAC, ECF 17.

Schwendeman alleges that Health Carousel engages in numerous practices that violate the California Labor Code. For example, she alleges that Health Carousel provides its traveling employees with stipends for housing, meals, and incidentals, but does not include the value of those stipends in the regular rate of pay when calculating overtime and double time. *See* FAC ¶¶ 11-17. She also alleges that Health Carousel does not include certain non-discretionary bonus remuneration in the regular rate of pay when calculating overtime and double time, and that wage statements inaccurately show overtime and double time as paid at the base hourly rate. *See* FAC ¶¶ 19-20. Schwendeman seeks recovery of civil penalties for these Labor Code violations on behalf of herself and other aggrieved employees under PAGA. *See* FAC ¶ 39.

The FAC's prayer indicates that the civil penalties sought under PAGA include "the underpaid wages recoverable through Labor Code section 558 and the penalties imposed by Labor Code section 203 recoverable through Labor Code section 1197.1, as well as the amounts recoverable pursuant to Labor Code section 2699(f)." FAC at 7 (Prayer). On September 12, 2019, the California Supreme Court held that "unpaid wages are not recoverable as civil penalties under the PAGA." *ZB, N.A. v. Superior Court of San Diego Cty.*, 8 Cal. 5th 175, 193 (2019). The parties thereafter stipulated that "Plaintiff's prayer for 'unpaid wages recoverable through Labor Code section 558 and the penalties imposed by Labor Code section 203 recoverable through Labor Code section 1197.1' is stricken from the First Amended Complaint." Joint Stipulation and Order at 3, ECF 29. As a result, the FAC's prayer for civil penalties is limited to those available under California Labor Code § 2699(f).

Health Carousel contends that the PAGA claim is subject to binding arbitration under the Agreement, and it moves to compel arbitration and dismiss this action. In the course of briefing and arguing the motion to compel, a dispute arose as to which aspects of the motion to compel properly are presented to the Court and which are reserved for the arbitrator. The Agreement delegates to the arbitrator "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement." Dalton Decl. Exh. 1 (Agreement) at 1. While the parties agree that certain arguments presented in the briefing fall within this delegation clause, Schwendeman asserts that Health Carousel has waived the right to have the arbitrator resolve those arguments. Health Carousel denies that it has waived its right to enforce the delegation clause. At the Court's requested, the parties submitted supplemental briefing on the waiver issue.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to arbitration agreements affecting interstate commerce. 9 U.S.C. §§ 1 *et seq*. When it applies, the FAA preempts state law rules that conflict with its provisions, as well as "state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341-43 (2011). Under the FAA, contractual arbitration agreements "must be enforced 'save upon such grounds as exist at

3

law or in equity for the revocation of any contract.'" *Newton v. Am. Debt Servs., Inc.*, 549 Fed. App'x. 692, 693 (9th Cir. 2013) (quoting 9 U.S.C. § 2).

"Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Although these gateway issues generally are for the court to decide, they "can be expressly delegated to the arbitrator where the parties *clearly and unmistakably* provide otherwise." *Brennan*, 796 F.3d at 1130. For example, the Supreme Court has "recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). "In those circumstances, a court possesses no power to decide the arbitrability issue." *Id*. "That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id*.

However, "[t]he right to arbitration, like other contractual rights, can be waived." *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016). "A determination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Id.* (internal quotation marks and citation omitted). "Because waiver of the right to arbitration is disfavored, any party arguing waiver of arbitration bears a heavy burden of proof." *Id.* (internal quotation marks and citation omitted). "As such, a party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id.* (internal quotation marks, citation, and alteration omitted).

## III. DISCUSSION

### A. Agreement

The Agreement provides for arbitration of "all claims or controversies, past, present or future, including without limitation, claims arising out of or related to my application for employment, assignment/employment, and/or the termination of my assignment/employment that the Company may have against me or that I may have against the Company. . . ." Agreement at 1. The Agreement specifies that it encompasses "claims for wages or other compensation due . . . and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance, except claims excluded in the subsection of this Agreement entitled 'Claims Not Covered By The Agreement." *Id.* The subsection "Claims Not Covered By The Agreement" excludes certain types of claims, including claims for workers' compensation benefits, state disability insurance benefits, and unemployment compensation, as well as claims brought in small claims court. *Id.* The Agreement also waives the right to assert a class or collective action. *Id.* at 2. The Agreement does *not* waive the right to assert a representative PAGA claim. *See generally* Agreement.

The Agreement contains a delegation clause stating in relevant part that: "The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the *interpretation, applicability, enforceability or formation of this Agreement* including, but not limited to any claim that all or any part of this Agreement is void or voidable." Dalton Decl. Exh. 1 (Agreement) at 1 (italics added).

In *Rent-A-Ctr.*, the Supreme Court held that identical language in a freestanding arbitration agreement was sufficient to delegate to the arbitrator all questions of arbitrability, including the plaintiff's contention that the arbitration agreement was unenforceable as unconscionable. *See Rent-A-Ctr.,* 561 U.S. at 66, 72-74. The Supreme Court held that had the plaintiff specifically challenged the validity of the delegation clause, as opposed to the validity of the arbitration agreement as a whole, the district court would have been required to consider the challenge before enforcing the delegation clause. *See id.* at 71. However, because the plaintiff did not challenge the delegation clause specifically, it was treated as valid and enforceable, "leaving any challenge

5

to the validity of the Agreement as a whole for the arbitrator." *See id.* at 72.

Applying *Rent-A-Ctr.*, this Court concludes that the delegation clause in the parties' Agreement delegates to the arbitrator all questions of arbitrability, including whether the parties have agreed to arbitrate and whether the Agreement covers a particular controversy.

### B. Waiver

At the hearing, Schwendeman's counsel "agree[d] that the arbitration agreement would satisfy the Supreme Court's standards for delegating the arbitrability determination." Hrg. Tr. 7:15-17. However, counsel asserted that Health Carousel waived its right to enforce the delegation clause through its litigation conduct, specifically, through its failure to invoke the delegation clause in its opening brief. *Id*. 7:19-25. Health Carousel's counsel disputed the assertion of waiver, stating that Health Carousel submitted the Agreement with its opening brief, and that when Schwendeman raised contract interpretation issues in her opposition, Health Carousel appropriately raised the delegation clause in its reply. *Id*. 12:12-13:1. The Court requested and received supplemental briefing on the waiver issue. *See* Suppl. Briefs, ECF 32, 35.

As discussed above, "a party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Martin*, 829 F.3d at 1124 (internal quotation marks, citation, and alteration omitted). Because there is a strong federal policy favoring enforcement of arbitration agreements, the party asserted waiver "bears a heavy burden of proof." *Id*. (internal quotation marks and citation omitted).

Waiver is to be decided by the court, absent an express delegation of authority to the arbitrator to decide the issue of waiver. *See Martin*, 829 F.3d at 1118; *Armstrong v. Michaels Stores, Inc.*, No. 17-CV-06540-LHK, 2018 WL 6505997, at *9 (N.D. Cal. Dec. 11, 2018). Neither party contends that the Agreement in the present case delegates the issue of waiver to the arbitrator, and the Court concludes that it does not. The Court therefore addresses Schwendeman's waiver argument, as follows.

With respect to the first prong of the test for waiver, Health Carousel clearly knew of its

1   right to compel arbitration, as it filed the present motion to compel arbitration along with a copy of

2   the Agreement. The Agreement contains a clear delegation clause. Schwendeman's waiver

3   argument thus turns on whether she can show that Health Carousel acted inconsistently with its

4   right to enforce the delegation clause, and that she suffered resulting prejudice.

5   Health Carousel's opening brief did not request that questions of arbitrability be referred to

6   the arbitrator. Instead, Health Carousel asked the Court to determine that the parties had entered

7   into a valid and binding arbitration agreement which encompasses the PAGA claim. *See* Motion,

8   ECF 19. Health Carousel submitted the signed Agreement, argued that the Agreement is valid and

9   enforceable, and asserted that the PAGA claim falls within scope of the claims covered by the

10  Agreement. *See id.* at 5-9.

11  Schwendeman advanced three arguments in her opposition brief as to why Health Carousel

12  did not satisfy the gateway requirements. First, she argued that no valid agreement to arbitrate

13  exists, because the state of California is the real party in interest with respect to the PAGA claim

14  and Schwendeman lacked authority to bind the state when she entered into the Agreement. *See*

15  Opp. at 1, ECF 25. Second, she argued that the Agreement does not encompass the PAGA claim.

16  *See id.* And finally, she argued that the Agreement restricts the arbitrator to awarding "individual

17  capacity" remedies, and thus the arbitrator could not award remedies on a representative basis as

18  sought in the PAGA claim. *See id.*

19  In its reply brief, Health Carousel addressed Schwendeman's first argument on the merits,

20  contending that her execution of the Agreement is binding as to the PAGA claim. Health Carousel

21  asserted that Schwendeman's second and third arguments raised issues of contract interpretation

22  that properly should be decided by the arbitrator under the Agreement's delegation clause, but it

23  also addressed the second and third arguments on the merits. *See* Reply at 1-5, ECF 26.

24  Nowhere in this course of conduct did Health Carousel assert that the Agreement's

25  validity, and in particular Schwendeman's authority to agree to arbitrate the PAGA claim, should

26  be reserved for the arbitrator. Both parties appear to assume that this issue should be determined

27  by the Court. Accordingly, although this Court likely would find the issue to be within the scope

28  of the delegation clause, Health Carousel has acted inconsistently with its right to have the issue

7

reserved for the arbitrator. Absent notice to Schwendeman that the issue might be reserved to the arbitrator for decision, and an opportunity to argue against such reservation, compelling arbitration of this issue would prejudice Schwendeman. The Court therefore decides this issue, below.

However, the Court finds that Health Carousel has not acted inconsistently with its right to have the arbitrator determine the scope of the Agreement, and in particular the contract interpretation issues raised by Schwendeman in her opposition. It is true that Health Carousel did not simply identify the Agreement in its opening brief and request that arbitrability of the PAGA claim be referred to the arbitrator. However, immediately upon Schwendeman's assertion of specific arguments going to the scope of the Agreement, Health Carousel contended in its reply that those arguments properly had been delegated to the arbitrator. None of the cases cited by Schwendeman found the existence of waiver in similar circumstances.

In *Martin*, cosmetology students brought a putative class and collective action against their cosmetology school, alleging that the school's requirement that the students perform unpaid labor to graduate violated state labor laws and the Fair Labor Standards Act. *Martin*, 829 F.3d at 1120. Approximately seventeen months after the complaint was filed, and after receiving a number of adverse rulings from the court, the defendants filed a motion to compel arbitration. *Id.* at 1122. The Ninth Circuit held that the district court did not abuse its discretion in finding that the defendants had waived their right to arbitrate. The defendants acted inconsistently with their arbitration right when they spent seventeen months litigating the case, filed a motion to dismiss on a key merits issue, entered into a protective order, answered discovery, and told the district judge that they likely were better off in federal court than in arbitration. *Id.* at 1126. The Ninth Circuit found that the plaintiffs were prejudiced by the defendants' conduct, holding that "[w]hen a party has expended considerable time and money due to the opposing party's failure to timely move for arbitration and is then deprived of the benefits for which it has paid by a belated motion to compel, the party is indeed prejudiced." *Id.* at 1127.

In *Newirth by & through Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 938 (9th Cir. 2019), the operator of senior living communities was sued by residents alleging fraud with respect to staffing levels. The defendant filed a motion to compel arbitration and a motion to

8

dismiss, but then withdrew those motions. *Id*. at 938-39. The parties stipulated to the filing of a second amended complaint and the defendant moved to dismiss that pleading. *Id*. at 939. Over the next eleven months, while the motion to dismiss was pending, the parties engaged in discovery and settlement negotiations. *Id*. The district court ultimately denied the motion to dismiss, after which the defendant filed a renewed motion to compel arbitration, approximately a year after withdrawing the initial motion to compel. *Id*. The Ninth Circuit found that the defendant acted inconsistently with its right to arbitration by litigating the arbitrable claims for two years and filing a renewed motion to compel arbitration only after receiving an adverse ruling. *Id*. at 942. The plaintiffs were prejudiced, because if the motion to compel had been granted, the plaintiffs would have been forced to relitigate key legal issues on which they already had prevailed. *Id*. at 944.

These cases are factually distinguishable from the present case, in which Health Carousel filed its motion to compel arbitration less than two months after service of the original complaint and less than two weeks after the filing of the operative FAC containing the PAGA claim. *See* Return of Summons, ECF 12, 13; FAC, ECF 17; Motion to Compel Arb., ECF 19. Health Carousel did not engage in months or years of litigation prior to seeking to compel arbitration, nor did it seek to compel arbitration only after an adverse judicial ruling.

The facts of *Vesta Corp. v. Amdocs Mgmt. Ltd.*, No. 3:14-CV-1142-HZ, 2016 WL 4541035, at *1 (D. Or. Aug. 31, 2016), are closer to those of the present case. In *Vesta*, the defendants filed a motion to dismiss certain of the plaintiffs' allegations as precluded by an arbitration provision in the parties' memorandum of understanding ("MOU"). In their motion, the defendants urged the district court to determine whether a valid arbitration agreement existed and whether the agreement encompassed the dispute at issue. *Id*. The district court concluded that the arbitration provision in the MOU did not encompass the dispute. *Id*. The defendants sought reconsideration, arguing for the first time that the district court did not have jurisdiction to decide the issue of arbitrability. *Id*. at *2. The district court denied the motion for reconsideration, finding that "[b]y asking this Court to determine whether 'there is a valid agreement to arbitrate the dispute here,' Defendants waived their right to send this case to an arbitrator for that determination." *Id*. at *3.

9

Schwendeman argues that this Court likewise should find that Health Carousel waived the right to send the issue of arbitrability to the arbitrator when it asked this Court to determine that the PAGA claim falls within the scope of the Agreement and to dismiss the action on that basis. While Schwendeman's argument has some superficial appeal, she ignores a key difference between *Vesta* and the present case, which is that the *Vesta* the defendants waited until they had lost their motion to dismiss before attempting to enforce the delegation clause of the arbitration agreement. In contrast, Health Carousel raised the delegation clause in the briefing on its motion.

*In re Checking Account Overdraft Litigation*, 754 F.3d 1290 (11th Cir. 2014), is distinguishable from the present case for the same reason. Johnson, a bank customer, sued KeyBank for overcharging in overdraft fees. "KeyBank asked the district court to take up the threshold question of arbitrability and to compel arbitration of Johnson's claim in accordance with his deposit agreement." *Id*. at 1292. "The district court decided the gateway issue, but not in KeyBank's favor: it refused to enforce the arbitration agreement as unconscionable." *Id*. Only after the case was remanded to the district court for reconsideration in light of recent precedent did KeyBank for the first time point to the delegation clause, arguing that the district court should have reserved the gateway issue for the arbitrator. *Id*. The Eleventh Circuit concluded that KeyBank waived enforcement of the delegation clause by raising it only after the issuance of an unfavorable unconscionability ruling. *Id*. Here, of course, Health Carousel asserted the delegation clause in its reply brief, during the litigation of its motion to compel arbitration and dismiss the case.

None of the authorities cited by Schwendeman persuade the Court that Health Carousel has waived its right to enforce the delegation clause regarding arbitrability issues. Health Carousel filed its motion to compel arbitration shortly after being served with the complaint and less than two weeks after the filing of the operative FAC containing the PAGA claim. Health Carousel asserted the delegation clause as soon as Schwendeman argued specific contract interpretation issues in opposition to the motion. While the Court agrees that a better approach would have been for Health Carousel to raise the delegation clause in its opening brief, none of the cited authorities compel a finding of waiver when Health Carousel raised the delegation clause in its reply brief.

10

Schwendeman argues Health Carousel's failure to raise the delegation clause in its opening brief caused her to litigate issues relating to the scope of the arbitration agreement in this forum, and that she will be prejudiced if she is forced to relitigate those issues in the arbitration forum. This argument lacks force. Schwendeman chose to file this action as a class and collective action in the district court despite clear language in the Agreement barring such suit, and she persisted in litigating her PAGA claim here despite the breadth of the Agreement and Ninth Circuit authority holding that arbitration of a PAGA claim may be compelled based on language similar to that in the Agreement. *See Valdez v. Terminix Int'l Co. Ltd. P'ship*, 681 F. App'x 592, 594 (9th Cir. 2017). "To prove prejudice, plaintiffs must show more than 'self-inflicted' wounds that they incurred as a direct result of suing in federal court contrary to the provisions of an arbitration agreement." *Martin*, 829 F.3d at 1126. "[I]n order to establish prejudice, the plaintiffs must show that, as a result of the defendants having delayed seeking arbitration, they have incurred costs that they would not otherwise have incurred, that they would be forced to relitigate an issue on the merits on which they have already prevailed in court, or that the defendants have received an advantage from litigating in federal court that they would not have received in arbitration." *Id.* (citations omitted). Schwendeman has not established prejudice of that type, except perhaps insofar as she may end up repeating contract interpretation arguments to the arbitrator that she made here. However, she may well be able to utilize the same research and briefing before the arbitrator, thus expending minimal additional resources. Moreover, she has not demonstrated that any prejudice suffered by having to repeat her arguments would be so substantial as to meet her "heavy burden" of establishing waiver on this record.

Accordingly, the Court concludes that the issue of Schwendeman's authority to agree to arbitrate the PAGA claim properly is addressed to the undersigned, but that the arbitrability of the PAGA claim otherwise has been delegated to the arbitrator, and Health Carousel has not waived such delegation.

**C.     Schwendeman's Authority to Agree to Arbitrate PAGA Claim**

Under PAGA, "an employee may seek civil penalties for Labor Code violations committed against her and other aggrieved employees by bringing – on behalf of the state – a representative

11

action against her employer." *ZB*, 8 Cal. 5th at 181 (2019) (citing Cal. Lab. Code § 2699(a)). Under California Labor Code § 2699(a), any provision of the California Labor Code that provides for assessment of a civil penalty by the Labor and Workforce Development Agency ("LWDA") may, as an alternative, be enforced by means of "a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees." Cal. Lab. Code § 2699(a). That statute defines "aggrieved employee" as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." Cal. Lab. Code § 2699(c). In bringing a representative action under PAGA, an aggrieved employee acts "as the proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009). Civil penalties recovered under PAGA are distributed between the aggrieved employees (25%) and the LWDA (75%). Cal. Labor Code § 2699(i).

Health Carousel cites Ninth Circuit authority that "an individual employee, acting as an agent for the government, can agree to pursue a PAGA claim in arbitration." *Valdez*, 681 F. App'x at 594; *see also Wulfe v. Valero Ref. Co.-Cal.*, 641 Fed. Appx. 758, 760 (9th Cir. 2016) ("The district court did not err in compelling arbitration of Wulfe's [PAGA] claim."). In *Valdez*, an employer appealed the district court's order denying its motion to dismiss or compel arbitration of the plaintiff's representative PAGA claim. *Valdez*, 681 F. App'x at 593. The district court had "reasoned that a PAGA claim belongs to the state, and the state has not waived the judicial forum, even where a private employee signs an employment contract requiring that PAGA claims be pursued in arbitration." *Id*. at 594 (internal quotation marks omitted). The Ninth Circuit found that "[t]he district court's holding on this point is incorrect," pointing out that "*Iskanian* and *Sakkab* clearly contemplate that an individual employee can pursue a PAGA claim in arbitration, and thus that individual employees can bind the state to an arbitral forum." *Id*. The Ninth Circuit noted that under California law, judgment in a PAGA representative action is binding not only on the named plaintiff but also on governmental agencies and other aggrieved employees. *Id*. Thus, the Ninth Circuit reasoned, "[e]mployees can bind government agencies because they represent the same legal right and interest as the government in PAGA proceedings." *Id*. (internal quotation marks and alterations omitted).

Schwendeman cites California appellate authority reaching the opposite conclusion. *See Correia v. NB Baker Elec., Inc.*, 32 Cal. App. 5th 602, 621-22 (Cal. Ct. App. 2019). In *Correia*, the state appellate court reasoned that that "[w]ithout the state's consent, a predispute agreement between an employee and an employer cannot be the basis for compelling arbitration of a representative PAGA claim because the state is the owner of the claim and the real party in interest, and the state was not a party to the arbitration agreement." *Id*. at 622. The court suggested that the employee's agreement to arbitrate may be enforceable once the state has provided the employee with implicit or explicit authority to bring the PAGA claim. *Id*. Before that time, however, the court concluded that "the employee has no authority or authorization to waive the state's rights to bring the state's claims in court." *Id*.

The *Correia* court acknowledged the contrary approach taken by the Ninth Circuit, but it found those cases to be unpersuasive. Addressing *Valdez* in particular, the *Correia* court observed that the Ninth Circuit "focused on the employee's role as the state's proxy (with the ability to bind the state and other employees) to support a rule that the employee's signature on a predispute arbitration agreement waives the employee's rights to bring the *state's* enforcement claims in court." *Correia*, 32 Cal. App. 5th at 623-24. In the *Correia* court's view, the Ninth Circuit's reasoning is flawed, because "the plaintiff does not assume this proxy role until it is an 'aggrieved employee,'" and the plaintiff is not "aggrieved" prior to a dispute arising. *Correia*, 32 Cal. App. 5th at 624. In the predispute period, the *Correia* court opined, "he or she is signing the agreement solely on his or her own behalf and not on behalf of the state or any other third party." *Id*. The court acknowledged that *Sakkab* assumed that PAGA claims can be arbitrated, but it gave *Sakkab* little weight based on the fact that *Sakkab* did not expressly consider "whether a private party can waive the state's right to litigate its PAGA claims in court *before any dispute has arisen*." *Id*.

It is clear from the record that Schwendeman had not yet begun her first assignment when she signed the Agreement. Schwendeman signed the Agreement on July 6, 2017, and she began work the following month, in August 2017. *See* Dalton Decl. ¶¶ 3-4, ECF 19-1. Given this timeline, Schwendeman argues that under *Correia* she was not an aggrieved employee with authority to bind the state when she signed the Agreement.

13

Schwendeman argues that *Correia* controls, because the Court must apply California law to determine whether a valid arbitration agreement exists. "In determining whether a valid arbitration agreement exists, federal courts apply ordinary state-law principles that govern the formation of contracts." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (internal quotation marks and citation omitted). "Federal courts sitting in diversity look to the law of the forum state – here, California – when making choice of law determinations."[1] *Id.* In California, absent a choice of law by the parties, a contract is interpreted under the law of the place of performance or, if it does not indicate the place of performance, under the law of the place of creation. *Welles v. Turner Entm't Co.*, 503 F.3d 728, 738 (9th Cir. 2007). Schwendeman's employment was performed in California. *See* FAC ¶ 4 ("Plaintiff is a citizen of Florida who was employed as a non-exempt hourly employee of Health Carousel, LLC and Health Carousel Travel Network, LLC in Palo Alto, California from August 2017 to February 2018."). Accordingly, California principles governing formation of contracts apply.

This does not necessarily mean that this Court must apply *Correia*, however. "When interpreting state law, federal courts are bound by decisions of the state's highest court." *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) (citation omitted). "In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Id*. "However, where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts." *Id*.

The California Supreme Court has not addressed whether a predispute agreement between an employee and an employer can be the basis for compelling arbitration of a representative PAGA claim. This Court therefore must predict how the California Supreme Court would resolve that issue. In making that prediction, the Court must follow *Correia* absent convincing evidence that the California Supreme Court would decide the issue differently. This Court finds convincing

---

[1] The operative FAC alleges subject matter jurisdiction based on diversity of citizenship. *See* FAC ¶ 2, ECF 17.

14

evidence in the reasoning of the California Supreme Court's decision in *Iskanian v. CLS Transportation Los Angeles*, LLC, 59 Cal. 4th 348, 388 (2014), and the Ninth Circuit's decision in *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015).

In *Iskanian*, the California Supreme Court held that a predispute employment agreement to waive representative PAGA claims "is contrary to public policy and unenforceable as a matter of state law." *Iskanian*, 59 Cal. 4th at 384. In reaching that conclusion, the *Iskanian* court observed that PAGA was enacted to address Labor Code violations, both by imposing civil penalties for such violations and by alleviating the "shortage of government resources to pursue enforcement" by permitting PAGA actions to be brought by individual employees. *Id*. at 379. The court emphasized that "an aggrieved employee's action under the PAGA functions as a substitute for an action brought by the government itself" and it therefore "is fundamentally a law enforcement action." *Id*. at 381 (internal quotation marks, citations, and alterations omitted). The court determined that "agreements requiring the waiver of PAGA rights would harm the state's interests in enforcing the Labor Code and in receiving the proceeds of civil penalties used to deter violations." *Id*. at 383. The *Iskanian* court left open the question of whether the employee's representative PAGA claim would proceed in arbitration or in the court, indicating that the parties should address that issue on remand. *Id*. at 392.

In *Sakkab*, the Ninth Circuit considered whether the *Iskanian* rule barring waivers of representative PAGA claims is preempted by the FAA. *See Sakkab*, 803 F.3d at 427. The *Sakkab* court noted that the FAA was enacted "in response to widespread judicial hostility to arbitration agreements." *Sakkab*, 803 F.3d at 431 (internal quotation marks and citation omitted). Under the FAA's "savings clause," arbitration agreements may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Moreover, even a state law rule that is "generally applicable" may be preempted if it conflicts with the FAA's objectives. *Id*. at 343. The Ninth Circuit concluded that the *Iskanian* rule is 'generally applicable' because it "bars any waiver of PAGA claims, regardless of whether the waiver appears in an arbitration agreement or a non-arbitration agreement." *Sakkab*, 803 F.3d at 432.

15

The *Sakkab* court also concluded that the *Iskanian* rule does not conflict with the FAA's objectives, because "[t]he *Iskanian* rule prohibiting waiver of representative PAGA claims does not diminish parties' freedom to select informal arbitration procedures." *Sakkab*, 803 F.3d at 436. The Ninth Circuit engaged in an extensive discussion regarding the issues attendant on arbitration of a representative PAGA claim, which the court characterized as "a statutory action for penalties brought as a proxy for the state." *Id*. at 435-39. The court found that those issues did not provide a basis for finding that arbitration is not a workable means for resolving PAGA claims. *Id*. The Ninth Circuit summarized its ruling as follows: "In sum, the *Iskanian* rule does not conflict with the FAA, because it leaves parties free to adopt the kinds of informal procedures normally available in arbitration. It only prohibits them from opting out of the central feature of the PAGA's private enforcement scheme – the right to act as a private attorney general to recover the full measure of penalties the state could recover." *Id*. at 439.

Nothing in *Sakkab* suggests that an employee's predispute agreement to arbitrate a PAGA claim is not binding. Indeed, the entire basis of *Sakkab's* determination that *Iskanian* does not run afoul of the FAA would be eviscerated by such a ruling. Arbitration agreements such as the one at issue here commonly are executed at the start of employment, before any dispute has arisen and thus before the employee is "aggrieved" under the reasoning of *Correia*. Application of *Correia* thus would exempt most, if not all, PAGA claims from arbitration in the employment context. This Court is not persuaded that the California Supreme Court would adopt *Correia* under these circumstances, when doing so would call into question the validity of the *Iskanian* rule.

This Court therefore concludes, consistent with the Ninth Circuit's rulings in *Valdez* and *Wulfe*, that Schwendeman had authority to agree to arbitration of the PAGA claim. Whether the PAGA claim falls within the scope of the arbitration agreement is a question for the arbitrator, for the reasons discussed above.

**D.     Dismissal versus Stay Pending Arbitration**

Health Carousel asks the Court to compel arbitration of the PAGA claim and dismiss this action. Because it is yet to be decided whether the PAGA claim is arbitrable under the terms of the Agreement, however, the Court finds it more appropriate to stay the action pending arbitration.

16

The Clerk shall administratively close the action during the pendency of the arbitration. If it is determined by the arbitrator that the PAGA claim is not subject to arbitration, Schwendeman may file a request to reopen the action and lift the stay, and the Court will do so immediately.

## IV. ORDER

(1) The motion to compel arbitration is GRANTED. As discussed herein, the arbitrability of the PAGA claim shall be decided by the arbitrator.

(2) The action is STAYED pending arbitration. The Clerk shall administratively close the action. If the arbitrator determines that the PAGA claim is not subject to arbitration, Schwendeman may file a request to reopen the action and lift the stay.

Dated: November 20, 2019

BETH LABSON FREEMAN
United States District Judge